IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ADDIE RUTH WEST                                              PLAINTIFF

VS.                                        CIVIL ACTION NO. 2:15cv165-FKB

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY                                             DEFENDANT

## ORDER

### I. Introduction

Addie Ruth West filed for a period of disability, disability insurance benefits, and supplemental security income on February 29, 2012.  Her application was denied both initially and upon reconsideration.  She requested and was granted a hearing before an ALJ, which was held on January 22, 2014.  On June 24, 2014, the ALJ issued a decision finding that West is not disabled.  The appeals council denied review.  West now brings this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  Having considered the memoranda of the parties and the administrative record, the Court concludes that the decision of the Commissioner should be affirmed.

### II. Facts and Evidence before the ALJ

West was born on November 18, 1956, and was 57 years of age at the time of the decision of the ALJ.  She has a high school education and completed one year of college.  She alleges disability beginning April 29, 2011, due to back pain, osteoarthritis, and hypertension.

The medical treatment record is sparse.  In a letter dated March 20, 2012, Denton Spiers, D.C., stated that he treated West from October 2006 until January 2007.

R. 259-60, [4] at 262-63.  West's presenting complaints were severe neck pain, lower back pain, and numbness and tingling radiating into the right arm.  R. 259, [4] at 262. Physical examination revealed spasms and tenderness of the paraspinal muscles in the cervical, thoracic and lumbar spine and pain in all regions.  *Id.*  Range of motion was normal in the cervical spine and moderately restricted in the lumbar spine. *Id.* Maneuvers were positive for pinched nerves in the cervical and lumbar spine. *Id.* Diagnosis was degenerative disc disease of the cervical and lumbar spine, midback pain, and severe muscle spasm.  R. 260, [4] at 263.  Dr. Spiers stated in his letter that West's prognosis in October of 2006 was poor and that while she was under his care, she was unable to lift or do any repetitive work for any amount of time. *Id.*

On January 9, 2007, West underwent a series of x-rays after being involved in a motor vehicle accident.  The x-rays indicated mild bilateral hip osteoarthritis, degenerative disc disease at C5-C6, neuroforaminal stenosis that was moderate at C4-C5 and mild at C5-C6, and degenerative disc disease of the lumbar spine.  R. 227-31, [4] at 330-34.

Dr. Spiers completed a medical source statement on June 11, 2013.  There is no indication that he had treated or evaluated West since January of 2007.  In the statement, he rated as moderately severe West's limitations in maintaining attention and concentration for extended periods, performing activities within a schedule, and maintaining regular attendance and being punctual.  R. 306, [4] at 309.  He rated as severe her limitations in the ability to complete a normal workday and workweek without interruptions from medically based symptoms and to perform at a consistent pace

2

without an unreasonable number and length of rest periods.  *Id.*  Dr. Spiers opined that West was not capable of performing light or sedentary work, even if she were allowed a sit/stand option.  R. 307, [4] at 310.

On February 26, 2013, West was seen by Dr. Bridget Tah-Clayton at the Hattiesburg Clinic.  Dr. Tah-Clayton's diagnoses were hypertension, osteoarthritis, degenerative joint disease at multiple sites, vitamin D deficiency, and decreased range of motion in the right shoulder.  R. 303, [4] at 306.  On January 21, 2014, Dr. Tah-Clayton completed a medical source statement.  In the statement, she rated as moderately severe West's limitations in maintaining attention and concentration for extended periods.  R. 314, [4] at 317.  In the areas of the ability to perform activities within a schedule, maintain regular attendance, and be punctual; to complete a normal workday and workweek without interruptions from medically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods, Dr. Tah-Clayton rated her as severely limited.  *Id.*  Dr. Tah-Clayton opined that West suffers from cervical and lumbar degenerative joint disease with radiculopathy, diabetes, and dysphagia.  R. 316, [4] at 319.  She recommended an EGD to evaluate West's numbness and tingling in the arms, hands, and feet.  *Id.*  According to Dr. Tah-Clayton, West is incapable of performing light or sedentary work, even with a sit/stand option.  R. 315, [4] at 318.  Dr. Tah-Clayton stated that West suffers from headaches as a result of pinched nerves and that her headaches cause problems with her concentration.  R. 316, [4] at 319.  She identified West's medications as Benicar HCT and Claritin.  R. 318, [4] at 321.

3

Dr. Stephen Massey performed a consultative physician examination of West on June 8, 2012.  West's recorded height at the exam was 5'6", and her weight was 226 pounds.  R. 263, [4] at 266.  West relayed to Dr. Massey a history of neck pain, low back pain, and intermittent numbness in her legs at night.  R. 262, [4] at 265. Dr. Massey observed that she experienced minor difficulty in getting on and off the examination table.  R. 263, [4] at 266.  Physical examination revealed a full range of motion in her upper extremities and in her lower extremities except for her left hip, where she experienced pain with flexion and rotation.  R. 264, [4] at 267.  There was no back tenderness or spasm.  *Id.*  Range of motion in the lumbar spine was 45 degrees with flexion, 10 degrees with extension, and 20 degrees with rotation.  *Id.* Her gait was slightly antalgic, but she used no assistive device.  *Id.*  She was able to squat halfway, at which point she stopped with complaints of knee and leg pain.  *Id.*  West was unable to walk heel-to-toe because of unsteadiness.  *Id.*  Straight leg raising was negative.  *Id.* Deep tendon reflexes were 2/4 in the arms and legs, and strength was 5/5.  *Id.* Hand grip was 4/5 bilaterally.  *Id.*  Fine and gross manipulation were within normal limits.  *Id.* Dr. Massey's diagnoses were chronic low back pain, chronic neck pain, polyarthralgia, hypertension, obesity, diabetes, and dyspnea on exertion.  R. 264-65, [4] at 267-68.  As to her exertional abilities, Dr. Massey opined that Plaintiff could lift only light objects, would need to avoid climbing, kneeling, and squatting, and would need periodic position changes when sitting.  R. 265, [4] at 268.  He stated that she should avoid repetitive and prolonged manipulation of small objects, squeezing, and grasping.  *Id.*  Dr. Massey also warned that West was at risk for injury due to knee instability.  *Id.*

4

Dr. Alvin Brent conducted a consultative review of West's medical records on July 20, 2012.  Dr. Brent identified West's diagnoses as hypertension and degenerative joint disease.  R. 274, [4] at 277.  He opined that West was capable of lifting ten pounds frequently and 20 pounds occasionally, that she could stand and walk six hours in an eight-hour workday, that she could occasionally climb, that she could frequently balance, stoop, kneel, crouch, and crawl, and that she had no manipulative limitations.  R. 276-78, [4] at 279-81.  X-rays of the lumbar spine performed in connection with the examination revealed mild multilevel degenerative changes.  R. 268, [4] at 271.

At the hearing, West testified and gave the following account of her living circumstances, work history, medical problems, and symptoms.   She lives alone in an RV.  R. 41, [4] at 44.  West's only source of income is the help she receives from her children.  R. 42, [4] at 45.  West also depends on her children and grandchildren to perform housekeeping and laundry tasks.  R. 55, [4] at 58.  She owns a truck and drives it approximately once per week.  R. 41, [4] at 44.

West previously worked in a photo processing lab but had to quit because of back pain.  R. 43, [4] at 47.  At Kohler Company, she worked as a machine operator, but she left that job because of problems with her hands.  R. 44, [4] at 47.  West tried to work as a janitor but had to quit because she developed overuse syndrome from operating a buffer.  R. 45, [4] at 48.  West also worked as a childcare worker at the University of Southern Mississippi and as an activities director for the Boy Scouts.  R. 46, [4] at 49.  According to West, the main problems that prevent her from working are pain in her lower back, hips, neck, and arms; arthritis in her hands; and carpal tunnel

5

syndrome.  R. 47, [4] at 50.  She takes Aleve for her pain but no other pain medication

because of side effects, difficulty swallowing pills, and the inability to afford payment for

drugs.  R. 50-51, [4] at 53-54.

West described significant difficulties with her morning routine.  To help with

getting out of bed, she sleeps on a board with a mattress that is tilted sideways so that

she can slide out.  R. 51, [4] at 54.  Once her feet are on the floor, she has to place her

feet apart to keep from falling and has to hold onto the wall to get to the bathroom.  R.

52, [4] at 55.  She has difficulties getting up from the toilet.  *Id.*  West is unable to lift her

arms and for that reason has been unable to brush her teeth for the past year.  *Id.*

When she finishes in the bathroom, she usually goes back to the bed and rests.  *Id.*

Before taking a shower, West checks her blood pressure to make sure it is not too high

for her to get up.  R. 53, [4] at 56.  Once in the shower, she is unable to wash certain

parts of her body, such as her legs, because she cannot bend down.  R. 52, [4] at 55.

She wears bath gloves for scrubbing because she is unable to hold a washcloth.  *Id.*

Taking a shower usually causes her blood pressure to go up, so she rests again before

getting dressed.  R. 53, [4] at 56.  She has to lie down in order to put her clothes on and

does not wear undergarments because she is unable to put them on.  R. 53, 54, [4] at

56, 57.  Once she is dressed, she eats cold cereal for breakfast.  R. 54, [4] at 57.  She

is unable to prepare food at the stove because of difficulties standing.  *Id.*  After

completing her morning routine, West tries to keep moving, but she has to be careful in

her activity level or her blood pressure will go up.  R. 53, [4] at 56.  By 11:00 a.m. or

noon, she has usually performed all the activity she can for the day. R. 56, [4] at 59.

Sharon Bourne, West's daughter, testified that she helps her mother by washing and tending to her hair, cooking for her or bringing her meals, and helping her with bathing and dressing.  R. 58, [4] at 61.  She said she tries to have her mother stay with her at her home as much as possible.  *Id.*

Also testifying at the hearing was a vocational expert (VE).  The VE described West's past relevant work as follows:  Inspector, light, semi-skilled, with a specific vocational preparation (SVP) of 2; packaging worker, medium, but heavy as performed by West, unskilled, with an SVP of 2; assembly inspector, light, semi-skilled, with an SVP of 3; janitor, medium, but heavy as performed by West, semi-skilled, with an SVP of 3; activities director, light, skilled, with an SVP of 8; and childcare worker, light, semi-skilled, with an SVP of 4.  R. 61-62, [4] at 64-65.  Concerning the activities director position, the VE estimated that West had actually performed this job at an approximate skill level of 4.  R. 64, [4] at 67.   The VE testified that West would have developed skills in the activities director position that would transfer to other jobs such as information clerk and appointment clerk.  *Id.*

The VE testified in response to three hypotheticals posed by the ALJ.  In the first, the ALJ asked her to assume an individual of West's age, education, and vocational background, who could perform work at the light exertional level with the following limitations:  She could frequently balance, could occasionally climb, kneel, stoop, crouch, and crawl; she could not work at unprotected heights; and she should avoid hazardous moving machinery.  R. 65, [4] at 68.  The VE responded that such a person

could perform West's past work of activities director and childcare worker and could also perform the jobs of counter clerk, usher, and cashier.  R. 66, [4] at 69.

In the second hypothetical, the ALJ asked the VE to assume the characteristics in the first hypothetical but with the following changes and additional limitations: Moderately severe limitations in her ability to maintain attention and concentration for extended periods, to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances; and severe limitations in her ability to complete a normal workday and workweek without interruptions from medically-based symptoms and to perform at a consistent pace without an unreasonable number and/or length of rest periods.  R. 66-67, [4] at 69-70.  The VE responded that there would be no work for such a person.  R. 67, [4] at 70.

Finally, the ALJ asked the VE to assume an individual with all the subjective limitations as described by West and her daughter in their testimony.  *Id.*  The VE responded that such a person would be precluded from performing any work.  *Id.*

### III. The Decision of the ALJ

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1]  He found that West had not been engaged in

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

      (1)     whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

      (2)     whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

      (3)     whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

substantial gainful activity since her alleged onset date of April 29, 2011, and that she

met the insured status requirements for Title II benefits through December 31, 2013.  R.

23, [4] at 26.  At step two, he found that West has the severe impairments of

hypertension, lower back pain, and degenerative joint disease and the non-severe

impairment of diabetes.  R. 23, 25, [4] at 26, 28.  At step three, the ALJ determined that

West does not have an impairment or combination of impairments that meets or

medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R.

26, [4] at 29.  The ALJ found that West has the residual functional capacity (RFC) to

perform light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the

following limitations:  She can frequently balance, can only occasionally climb, kneel,

stoop, crouch, and crawl, and should never work at unprotected heights or around

hazardous machinery.  *Id.*  In determining West's RFC, the ALJ gave great weight to Dr.

Massey's opinion that she was limited to light work.  R. 29, [4] at 32.  He also gave great

weight to the opinion of Dr. Brent.  *Id.*  The ALJ assigned little weight to the opinions of

Dr. Spiers and Dr. Tah-Clayton, as well as to that portion of Dr. Massey's opinion in

which he stated that West should avoid repetitive and prolonged manipulation of small

objects, squeezing, and grasping.  *Id.* The ALJ considered West's subjective allegations

---

       (4)       whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

       (5)       whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. § 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

of pain and limitations but found that they were not entirely credible, in that they were inconsistent with the objective medical evidence.  R. 28, [4] at 31.  At step four, the ALJ, relying upon the testimony of the VE, found that West is capable of performing her past relevant work as an activities director.  R. 30, [4] at 33.  He therefore found that she is not disabled.  *Id.*

## IV.  Analysis

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2]  In her memorandum, West makes three arguments:  That the ALJ erred by failing to find that West's obesity is a severe impairment, that he erred in giving little weight to the opinions of West's treating physicians, and that the ALJ's determination that she can perform her past work is not supported by substantial evidence.

West argues that the ALJ erred by failing to find that her obesity constituted a severe impairment and failing to consider its effect on her other impairments.  The manner in which obesity is to be considered is addressed in Social Security Ruling 02-1p, which explains that obesity is to be considered throughout the disability evaluation

---

[2] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ."  *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).  If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed*, Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is against the Commissioner's decision*, Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

process. SSR 02-1p, 2002WL34686281. It may constitute a severe impairment, either alone or in combination with another impairment, may increase the severity of an existing impairment, and may cause limitations in function. *Id.* The record in the present case indicates that West is 5'6" in height and weighs approximately 226 pounds. Thus, her BMI is 36.5, a figure that places her well within Level II obesity as defined by the National Institutes of Health. Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-4083, September 1998).[3] The ALJ failed to address West's obesity in his decision, and West argues that this failure constitutes reversible error. She further contends that she was prejudiced by this error because her obesity intensifies her low back pain and degenerative joint disease and impacts her RFC.

The Court agrees that the ALJ erred in failing to address West's obesity in his written decision. However, the Court does not agree that West can show prejudice from the error. The ALJ gave careful consideration to the evidence concerning West's low back pain, degenerative joint disease, and functional capacity – the areas identified by West as being impacted by her obesity. West has not shown how any further consideration of her obesity could have changed the ALJ's ultimate decision of non-disability. "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). Because West's rights were not affected by the error, reversal is not required.

---

[3] The Clinical Guidelines and the three levels of obesity recognized therein are cited in SSR 02-1p.

West next argues that the ALJ erred in failing to give the proper weight to the opinions of Dr. Spiers and Dr. Tah-Clayton, both of whom she describes as treating physicians.  The opinion of a treating physician is generally entitled to considerable weight in determining disability.  *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5ᵗʰ Cir. 1994)) A "good cause" exception exists, however, when the treating physician's opinion is brief or conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.  *Id.*

A threshold issue is the proper categorization of Dr. Spiers.  Dr. Spiers is a chiropractor, not a physician.  As such, he is not an "acceptable medical source" but, rather, an "other medical source."  20 C.F.R. § 404.1513a(d)(1).  Only an acceptable medical source can be considered a treating source whose opinion is entitled to controlling weight.  *Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5ᵗʰ Cir. 2009), SSR 06-03p (2006).  Furthermore, the ALJ explained that he gave little weight to Dr. Spiers' opinion because it was inconsistent with the objective medical evidence in the record, including the x-rays, which showed only mild degenerative changes of the lumbar spine. The ALJ came to the same conclusion regarding the opinion of Dr. Tah-Clayton, and that explanation suffices to establish good cause for giving her opinion little weight.  The ALJ adequately explained his reasons for assigning the weight given to the respective sources.  There was no error in this regard.

West's final argument concerns the ALJ's determination that she could perform her past relevant work as an activities director.  The VE testified that West's past work

12

for the Boy Scouts was properly classified as activities director, DOT § 187.117-046.

She explained that the DOT description assigns an SVP of 8 to this position, but that as

performed by West the job had an SVP of approximately 4.  Based in part upon the

VE's testimony, the ALJ found that West could perform her past relevant work as an

activities director.  West contends that this finding was not supported by substantial

evidence.  Her primary argument is based upon the SVP rating for the job.  According to

West, the DOT provides that the minimum learning period for a job with an SVP of 8 is

four years, and because West performed the job of activities director for only one year,

the ALJ erred in finding that she could perform it.

      The first flaw in West's argument relates to the meaning of SVP.  The DOT

defines SVP as "the amount of lapsed time required by a typical worker to learn the

techniques, acquire the information, and develop the facility needed for average

performance in a specific job-worker situation."  *Dictionary of Occupational Titles*, App.

C: Components of the Definition Trailer (rev. 4th ed. 1991), *available at*

http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.  It goes on to

explain that this training may be acquired in a number of situations, including school and

experience in other jobs; it does not have to be acquired solely from on-the-job training.

Thus, West is incorrect in equating SVP with the time required to have been spent in a

particular job.  Furthermore, the VE testified that as actually performed by West, the

activities director position had an SVP of approximately 4, rather than 8.  The DOT

provides that the time required to learn a job with an SVP of 4 is "over 3 months up to

and including 6 months."  Thus, even under West's own rationale, she held the job for a

sufficient period.  There is simply no argument to be made that she did not hold the job long enough to have learned to perform it.  The ALJ did not err at his step four determination.

Furthermore, the Court's review of the record as a whole leads it to conclude that the ALJ's determination was supported by substantial evidence, specifically, the findings and opinions of Dr. Massey and Dr. Brent.

## V.  Conclusion

The Court concludes that the decision of the Commissioner is supported by substantial evidence and that no reversible errors of law were made.  Accordingly, the decision is affirmed.  A separate judgment will be entered.

So ordered, this the 27th day of March, 2017.

s/ F. Keith Ball
United States Magistrate Judge